**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| O.W. Bunker Holding North America Inc., *et al.*,[1] | : | Case No. 14-51720 (AHWS) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

**DEBTORS' OBJECTION TO (I) REQUEST BY O'ROURKE MARINE
SERVICES L.P., L.L.P. FOR ALLOWANCE AND REIMBURSEMENT
OF 11 U.S.C. § 503(b)(9) ADMINISTRATIVE EXPENSES AND
(II) O'ROURKE MARINE SERVICES PROOF OF CLAIM #11
FILED AGAINST DEBTOR O.W. BUNKER USA INC.**

O.W. Bunker Holding North America Inc. ("OWB Holding"), O.W. Bunker North America Inc. ("OWB-NA"), and O.W. Bunker USA Inc. ("OWB-USA"), collectively debtors and debtors in possession in the above-captioned cases (the "Debtors"), by and through their undersigned attorneys, hereby object (the "Objection") to O'Rourke Marine Services L.P., L.L.P.'s ("O'Rourke") (i) Request for Allowance and Reimbursement of 11 U.S.C. § 503(b)(9) Administrative Expense [Docket No. 770][2] (the "O'Rourke Request") and (ii) O'Rourke's Proof of Claim against OWB-USA [Claim No. 11, Case No. 14-51722] (the "O'Rourke POC"). In support of the Objection, the Debtors respectfully state as follows:

**JURISDICTION**

1.  This Court has jurisdiction over this matter under 28 U.S.C. §§157 and 1334. This is a core proceeding under 28 U.S.C. §157(b)(A), (B) and (O). Venue of these cases and

---

[1] The last four digits of the Debtors' taxpayer identification numbers follow in parentheses: O.W. Bunker Holding North America Inc. (7474), O.W. Bunker North America Inc. (7158) and O.W. Bunker USA Inc. (3556). The Debtors' address is 281 Tresser Blvd., 2 Stamford Plaza, 15th Floor, Stamford, CT 06901.

[2] Unless otherwise noted, all references to "Docket No. ___" will refer to the docket in *In re O.W. Bunker Holding North America Inc.*, Case No. 14-51720.

this Objection in this district is proper under 28 U.S.C. §§1408 and 1409.  The statutory predicates for the relief requested herein are found in §§105(a) and 503 of chapter 11, Title 11, United States Code (the "Bankruptcy Code"), and rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

2. On November 13, 2014 (the "Petition Date"), each of the Debtors commenced a voluntary case in this Court (the "Chapter 11 Cases") under chapter 11 of the Bankruptcy Code. The Debtors are authorized to act as debtors in possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code.  On November 19, 2014, this Court ordered that the Debtors' cases be jointly administered for procedural purposes pursuant to Bankruptcy Rule 1015(b) and D. Conn. LBR 1015-1.

3. On November 26, 2014, the United States Trustee appointed the Official Committee of Unsecured Creditors of O.W. Bunker Holding North America Inc., *et al.* (the "Committee").  No trustee or examiner has been appointed in the Chapter 11 Cases.

4. Since the Petition Date, the Debtors have consolidated their remaining operations in their Stamford, Connecticut headquarters: 2 Stamford Plaza, 15th Floor, 281 Tresser Blvd., Stamford, CT 06901.

5. The Bankruptcy Court's *Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, and Deadlines* [Docket No. 9] set March 16, 2015 as the claims bar date (the "Bar Date") in the above captioned cases.

6. On March 16, 2015, O'Rourke filed the O'Rourke POC, asserting a total claim of $1,268,641.31.  Of this amount, O'Rourke alleges that the entire $1,268,641.31 is entitled to payment pursuant to §507(a)(2) as a claim under §503(b)(9) for goods shipped to the Debtors

during the time frame of October 24, 2014 through November 13, 2014 (the "503(b)(9) Period").

The O'Rourke Request, filed on August 5, 2015 [Docket No. 770], is identical to the O'Rourke

POC with respect to the transactions O'Rourke asserts occurred within the 503(b)(9) Period:[3]

- On or about October 28, 2014, O'Rourke delivered to *O.W. Bunker North America Inc.* 990.13 metric tons of bunkers to the vessel tanker EVA SCHULTE valued at $806,833.43 (the "EVA SCHULTE Bunkers"). O'Rourke billed *O.W. Bunker North America Inc.*

- On or about October 31, 2014, O'Rourke delivered 150.00 metric tons of bunkers to the vessel COSCO VENICE, valued at $121,296.27 (the "COSCO VENICE Bunkers"). O'Rourke billed *O.W. Bunker USA Inc.*

- On or about November 1, 2014, O'Rourke delivered 148.44 metric tons of bunkers to the vessel COSCO HAIFA, valued at $122,457.85 (the "COSCO HAIFA Bunkers"). O'Rourke billed *O.W. Bunker USA Inc.*

- On or about November 4, 2014, O'Rourke delivered 170.00 metric tons of bunkers to the vessel SYDNEY EXPRESS, valued at $140,244.39 (the "SYDNEY EXPRESS Bunkers"). O'Rourke billed *O.W. Bunker USA Inc.*

- On or about November 6, 2014, O'Rourke delivered 47.28 metric tons of bunkers to the vessel DERBY D, valued at $39,102.90 (the "DERBY D Bunkers"). O'Rourke billed *O.W. Bunker USA Inc.*

7. Despite filing the entire O'Rourke POC against OWB-USA, the Debtors' own books and records – as well as the documentation provided by O'Rourke itself at Exhibit A to the O'Rourke Request – confirm that the EVE SCHULTE Bunkers involve claims that should have been asserted against OWB-NA (the "O'Rourke OWB-NA Claims"). The Debtors believe that the O'Rourke OWB-NA Claims should be reclassified in their entirety as claims against OWB-NA. O'Rourke's claims for the COSCO VENICE Bunkers, the COSCO HAIFA Bunkers, the SYDNEY EXPRESS Bunkers, and the DERBY D Bunkers (collectively, the "O'Rourke

---

[3] For the purposes of this paragraph, the Debtors reference the factual allegations made by O'Rourke in paragraphs 6 through 10, and Exhibits A through E of the O'Rourke Request. The Debtors do not adopt these numbers as their own or concede that O'Rourke is entitled to an administrative expense in these amounts. As detailed in this objection, the Debtors believe that O'Rourke administrative expense request is substantially overstated and that a vast majority of O'Rourke's claimed administrative expenses are properly reclassified as unsecured claims.

OWB-USA Claims") were properly filed against OWB-USA.  The OWB-USA Claims and the O'Rourke OWB-NA Claims are jointly referrd to herein as the "O'Rourke 503(b)(9) Claims".

8.      The O'Rourke OWB-NA Claims are related to marine fuel delivered by O'Rourke to the barge EVA SCHULTE.  This Court authorized O'Rourke's reclamation of the EVA SCHULTE Bunkers under a Stipulated Order [Docket No. 155].  O'Rourke successfully reclaimed 236,958.68 gallons of marine bunkers, or approximately 78% of the original O'Rourke inventory on the EVA SCHULTE.  The reclaimed inventory at original contract price would have been valued at $628,446.43.  *See* Notice of Accounting [Docket No. 362].[4]

9.      This Objection addresses the O'Rourke 503(b)(9) Claims. To the extent any portion of the O'Rourke 503(b)(9) Claims are deemed allowed as non-priority general unsecured claims, the Debtors reserve all rights with respect to the balance of this claim as well as the remaining claims set forth in the O'Rourke POC including, without limitation the right to object to said claims as part of the claims reconciliation process to be implemented pursuant to a plan of liquidation confirmed in these cases.

## SUMMARY OF OBJECTIONS AND RELIEF REQUESTED

10.     The O'Rourke 503(b)(9) Claims are not entitled to administrative treatment or priority payment for one or more of the following reasons: (i) the claim constitutes a claim for services rather than for goods; (ii) assuming *arguendo* that the claim is a claim for goods, such goods were not (a) received by the Debtors, or (b) received by the Debtors within the twenty day 503(b)(9) Period; (iii) the claim will be satisfied by another order of this Court or an order of another United States District Court sitting in admiralty; (iv) O'Rourke successfully reclaimed a significant portion of the EVA SCHULTE Bunkers; or (v) the O'Rourke 503(b)(9) Claims are

---

[4] At reclamation, the reclaimed oil had a market value of $421,288.83.

asserted against the wrong OWB debtor entity. Accordingly, the Debtors request that, pursuant to §§105(a) and 503 of the Bankruptcy Code, the O'Rourke 503(b)(9) Claims be disallowed or reclassified as a non-priority general unsecured claims as described more fully herein and as set forth in the enclosed proposed form of order (the "Order," attached hereto as **Exhibit A**).

## OBJECTION

I. **THE O'ROURKE 503(b)(9) CLAIMS ARE OVERSTATED AND SUBJECT TO DISALLOWANCE OR RECLASSIFICATION AS NON-PRIORITY GENERAL UNSECURED CLAIMS.**

    A. **Legal Standard for the Allowance of a 503(b)(9) Claim**

11. Section 503(b)(9) of the Bankruptcy Code provides that

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502 (f) of this title, including—
>
> > (9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

11 U.S.C. § 503(b)(9). Section 503(b)(9) is strictly construed. *See In re World Imports Ltd.*, 511 B.R. 738, 740 (Bankr. E.D. Pa. 2014) (citing *Howard Delivery Serv. Inc. v. Zurich Am. Insur. Co.*, 547 U.S. 651, 655 (2006). A creditor seeking allowance and priority payment of an administrative expense "has the burden of proving that its claim is within section 503." *In re Collins & Aikman Corp.*, 384 B.R. 751, 759 (Bankr. E.D. Mich. 2008) (citing in part *United Trucking Service., Inc. v. Trailer Rental Co. (In re United Trucking Service, Inc.)*, 851 F.2d 159, 161 (6th Cir. 1988)) (other citations omitted). As set forth herein, the O'Rourke 503(b)(9) Claims do not satisfy one or more parts of §503(b)(9)'s strict requirements and are therefore subject to disallowance or recharacterization as a non-priority general unsecured claim.

### B. The O'Rourke 503(b)(9) Claims Should be Recharacterized as Non-Priority General Unsecured Claims to the Extent That They Do Not Seek Payment for Goods

12. Section 503(b)(9) applies only to the receipt of goods. *See In re Pilgrim's Pride Corp.*, 421 B.R. 231, 242 (Bankr. N.D. Tex. 2009) ("Section 503(b)(9) does not provide for an administrative claim for services."). Courts generally apply the definition of the word "goods" contained in §2-105(1) of the Uniform Commercial Code (the "UCC"). *See, e.g., In re GIC Gov't Sec.*, 64 B.R. 161 (Bankr. M.D. Fla. 1986). Section 2-105(1) of the UCC provides that "'[g]oods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action." *See In re Goody's Family Clothing Inc.*, 401 B.R. 131, 134 (Bankr. D. Del. 2009). Thus, a vendor's §503(b)(9) Claim is invalid and subject to reclassification where such asserted claim seeks a priority payment for services or other nontangible items rather than goods.

13. The O'Rourke 503(b)(9) Claims allege that the goods the Debtors received consist of marine fuel bunkers ("Bunkers") delivered directly to certain vessels ("Vessels"). Whether or not this is the case (and the Debtors reserve all rights with respect to delivery and possession as set forth herein), a creditor is not entitled to an administrative expense and priority payment for items other than Bunkers that are not considered goods, such as sales taxes, spill booms, delivery fees and other related services. Specifically, the Debtors have identified the following amounts which should be reclassified as unsecured claims:

- O'Rourke OWB-NA Claim: $897.31 (fees and Federal taxes)
- O'Rourke OWB-USA Claim: $466.17 (fees and Federal taxes)

**C.     Priority Treatment under §503(b)(9) is Limited to Goods Delivered to the Debtor Within the 503(b)(9) Period.**

14.     Section 503(b)(9) requires that a vendor must have delivered the goods in the ordinary course of business within twenty days prior to the commencement of the bankruptcy filing. *See In re TI Acquisition, LLC*, 410 B.R. 742, 746 (Bankr. N.D. Ga. 2009) (detailing BAPCPA changes that created §503(b)(9)). Thus, the O'Rourke 503(b)(9) Claim is invalid to the extent a claimant seeks payment for goods delivered to the Debtors on any date falling outside the 503(b)(9) Period.

**D.     The O'Rourke OWB-NA 503(b)(9) Claim is Subject to Disallowance In Part for the Invoice Value of Reclaimed Inventory.**

*1.     As a Reclamation Claimant, the O'Rourke OWB-NA Claim has been Satisfied to the Extent of the Amount of Goods it Recovered*

15.     The law on reclamation is clear that a "successful reclamation of goods excludes all other remedies" with respect to those goods. *See* UCC § 2-702(3). As explained by the Sixth Circuit Court of Appeals, "'[b]ecause the right of the seller to reclaim goods under this section constitutes preferential treatment as against the buyer's other creditors,' successful reclamation bars the seller from pursuing any other remedies from the buyer." *See Phar-Mor, Inc. v. McKesson Corp.*, 534 F. 3d 502, 505 (6th Cir. 2008) (quoting Ohio's version of UCC § 2-702, Official Comment 3 (1966)). The principal effect of reclamation is that "the buyer is not treated as having breached the contract (by failing to pay), but rather, the contract is rescinded and the reclaimed goods are returned to the seller as though the contract had never been entered and the goods never delivered." *Id.* Therefore, "[i]f a Seller takes possession of the goods subject to its demand, neither the court nor any other party requires a calculation of value." *In re Coupon Carriers Co.*, 77 B.R. 650, 651 (N.D. Ill. 1987).

16. O'Rourke, as a successful reclamation claimant received a preferential recovery of $627,549.30 by choosing to reclaim the EVA SCHULTE Bunkers. O'Rourke's exercise of its right to reclaim the EVA SCHULTE Bunkers rescinded approximately 78% of the contract between O'Rourke and OWB-NA. Subtracting this amount valued at delivery of $627,549.30 from the O'Rourke OWB-NA Claim of $806,833.43, leaves a remaining balance of $179,284.13 for the reclaimed bunkers.

17. After reduction of the $897.13 addressed in paragraph 13 above for charges not attributable to the delivery of goods from the $179,284.13 balance remaining following exercise of its rights of reclamation, O'Rourke's OWB-NA Claim should be allowed only in the amount of $178,387.00.

> 2. *O'Rourke is Not Entitled to Recover any Loss Between the Contract Price and the Market Price of the Reclaimed EVA SCHULTE Inventory as Either an Administrative Expense or as an Unsecured Claim Against OWB-NA*

18. The Debtors anticipate that O'Rourke will seek to value the oil it reclaimed at the price in effect on the date of reclamation rather than at the contract price. However, courts that have addressed this issue have made determined that O'Rourke's 503(b)(9) Claim must be valued at the contract price for the reclaimed portion of the EVA SCHULTE inventory. *See In re Pester Refining Co.*, 964 F.2d 842, 848 n.8 (8th Cir. 1992) (valuing reclamation claim at price of invoice); *see also In re Circuit City Stores, Inc.*, 441 B.R. 496, 510-511 (Bankr. E.D. Va. 2010) (concluding reclamation "is an *in rem* remedy that provides a right to reclaim only the goods themselves" and did not extend to proceeds on the sale). The O'Rourke OWB-NA Claim is properly valued at $178,387.00.

19. Courts addressing the issue of which party bears the risk of Market Loss have determined that the reclaiming seller bears the Market Loss risk when a debtor sells the

-8-

reclaimed goods pursuant to a court approved, commercially reasonable transaction. *See Coupon Carriers Co.*, 77 B.R. at 652-53 (stating that reclaiming seller "cannot now demand that the valuation mechanism it accepted be set aside simply because it may have made a bad bargain or because the debtor may have earlier contracted to pay more than the market value of the goods at the time of sale. Risk of such a differential should not be imposed on the estate. Even a secured creditor has only an unsecured claim for any amount by which the dollar amount of its claim exceeds the value of its collateral. The same rule must apply here.") (internal citations omitted); *In re Performance Papers, Inc.*, 119 B.R. 127, 130 (Bankr. W.D. Mich. 1990) ("Coupon Carriers recognizes that, by the reclamation creditor consenting to a commercially-reasonable sale as a valuation mechanism, the risk of obtaining less than the original contract price falls upon the reclamation creditor and not the bankruptcy estate.").[5]

20.     O'Rourke's assertion that the Debtors bear the risk of Market Loss, especially in a commercial transaction controlled by O'Rourke *in which the Debtors were not involved*, is incompatible with the priority treatment O'Rourke already received in reclaiming the EVA SCHULTE Bunkers pursuant to section 546(c)(1). O'Rourke decided to sell its portion of the reclaimed EVA SCHULTE inventory at the time it did, to the purchaser it chose, at the price it thought was commercially reasonable. Any risk of Market Loss is entirely on O'Rourke; to provide otherwise would adversely affect the Debtors' estates and other unsecured creditors (the vast majority of which do not have reclamation rights) and upset one of the goals of the bankruptcy process – equality of distribution of the Debtors' estates.

---

[5] The *Coupon Couriers* court noted that a reclaiming seller may be "entitled to pursue an unsecured claim for the balance of its claim – that is, the difference between the original sale price of the [reclaimed goods] (as reflected in the … invoices) and the value of its reclamation right (as reflected by the proceeds raised by the sale of the [reclaimed goods]). *See Coupon Couriers*, 77 B.R. at 653. However, this portion of the *Coupon Couriers* opinion addressed the specific instance of whether an unsecured claim was appropriate where the debtor sold the reclaimed goods with seller's consent pursuant to a court ordered sale. Id. at 650-51.

### E. The O'Rourke OWB-USA Claim is Subject to Reclassification in its Entirety as a Non-Priority General Unsecured Claim Against O.W. Bunker USA Inc. Because the Debtors Did Not Receive Physical Possession of Any Goods

#### 1. OWB-USA Did Not Take Actual Physical Possession of Bunkers that Were Delivered Directly to Vessels or Other OWB Entities

21. Section 503(b)(9) expressly provides that a debtor must *receive* goods, not the equivalent value of the goods within the 503(b)(9) Period in order to trigger an administrative expense. *In re Plastech Engineered Products, Inc.*, Case No. 08-42417, 2008 WL 5233014, at*2 (Bankr. E.D. Mich. Oct. 7, 2008) (emphasis added). A §503(b)(9) administrative expense is provided for those goods which a debtor "tak[es] physical possession of." *In re Circuit City Stores, Inc.*, 432 B.R. 225, 228-29 (Bankr. E.D. Va. 2010) (citing to UCC §2-103(c) for definition of "receipt"). A debtor that directs delivery to a third party such as a common carrier pursuant to contractual delivery obligations does not establish "receipt" under 503(b)(9). *In re Ningbo Chenglu Paper Products Mfg. Co. Ltd.*, Case No. 11-cv-479, 2012 WL 3765171, *6-7 (D.N.H. Aug. 29, 2012).

22. OWB-USA never owned or leased its own marine fuel storage facility. Instead, under OWB-USA's prepetition business model, Bunkers were purchased from third party physical suppliers, and OWB-USA arranged for the Bunkers to be delivered to other companies within the global O.W. Bunker corporate family or directly to third party customer Vessels, by means of subcontracting with physical suppliers for the delivery of Bunkers to the Vessels. Each physical supplier remained in actual physical possession of the Bunkers until such time as it delivered the Bunkers directly to the Vessels. This is the epitome of a drop-shipment transaction wherein physical suppliers' delivery of Bunkers directly to Vessels resulted in OWB-USA never having received actual physical possession of these Bunkers, leaving the physical suppliers unable to satisfy the criteria to establish receipt for purposes of allowing a 503(b)(9) claim.

23.     Courts addressing the relationship between drop-shipments and §503(b)(9) have overwhelmingly concluded that drop-shipments *do not* give rise to a valid §503(b)(9) administrative expense entitled to priority payment because the debtor did not take possession of the goods in question. *See, e.g., In re World Imports*, 516 B.R. 296, 298-300 (Bankr. E.D. Pa. 2014) (concluding that drop shipment to a debtor's customer did not constitute actual possession for §503(b)(9)'s purposes); *Ningbo Chenglu, supra* (directed delivery to a third party does not establish receipt for purposes of 503(b)(9)).

24.     It is undisputed that OWB-USA never stored or otherwise took physical possession of Bunkers ultimately delivered by physical suppliers directly to other non-debtor OWB entities or Vessels.  Without satisfying the critical element of actual physical possession by OWB-USA, the O'Rourke OWB-USA Claims fail and are subject to recharacterization as non-priority general unsecured claims as set forth herein.

   *2.     OWB-USA Likewise Did Not Have Constructive Possession of Bunkers Delivered Directly to Vessels or Other OWB Entities*

25.     Courts addressing the applicability of §503(b)(9) to drop-shipments, have also determined that such arrangements do not constitute constructive physical possession for purposes of administrative priority. *See Ningbo Chenglu*, at *6 (affirming bankruptcy court's determination that "under Section 503(b)(9), delivery to, or possession by, a debtor's customer under a drop-shipment arrangement do not constitute constructive possession by the debtor for §503(b)(9) purposes").

26.     Moreover, if constructive possession were considered plausible in the drop shipment context for purposes of Bankruptcy Code § 503(b)(9), the transaction at issue with respect to the O'Rourke OWB-USA Claims does not establish constructive possession by the Debtors.  In the transactions that give rise to the O'Rourke OWB-USA Claims, OWB-USA was,

-11-

at best, an intermediary supplier in the transactions. In this role, OWB-USA was not the party within the transaction chain that issued either: (a) a sales order confirmation and invoice to the Vessels (a contract supplier); or (b) a bunker delivery receipt to the Vessels (a physical supplier). As such, OWB-USA never had privity of contract with the Vessels in these transactions sufficient to create a contractual, bailment or other relationship between OWB-USA and the Vessels. Having no such relationships in this drop shipment context, OWB-USA could not have had constructive possession of the Bunkers at any time for purposes of Bankruptcy Code §503(b)(9).

27. Finally, OWB-USA did not have constructive possession of the Bunkers following delivery to a Vessel by a physical supplier because OWB-USA had no ability or authority to stop delivery to the Vessels or prevent the immediate consumption of the Bunkers. The consumption of the Bunkers by the Vessels prior to the expiration of credit terms issued to a contract supplier by a physical supplier or to a Vessel by a contract supplier eliminates any argument of possession by OWB-USA.

28. For all of these reasons, the O'Rourke OWB-USA Claim, totaling $422,635.24 (including the $466.17 in non-goods) is a non-priority general unsecured claim.

## II. ALTERNATIVELY, THE COURT SHOULD PERMIT THE DEBTORS TO PROPOSE A PLAN OF LIQUIDATION THAT DOES NOT RESERVE FOR O'ROURKE'S 503(B)(9) CLAIMS

### A. No Reserve Is Required Because O'Rourke Is Simultaneously Engaged in Maritime Lien Litigation Which Jeopardizes the Debtors' Recovery Rights.

29. Several of the physical suppliers, including O'Rourke , have sought to recover payment directly from Vessels under various maritime legal theories while simultaneously seeking recovery under Bankruptcy Code section 503(b)(9). These physical suppliers are advocating that they have a maritime lien for providing "necessaries," *i.e.* Bunkers, to the

Vessels and in addition to filing 503(b)(9) claims in these proceedings, have also sought to enforce these purported maritime lien rights through interpleader actions and vessel arrest proceedings in multiple United States District Courts (the "<u>District Court Actions</u>"). The Debtors continue to monitor and have been required to participate in (at significant expense to the Debtors' estates), a number of these pending District Court Actions.

30. The Debtors ask that this Court exercise its equitable powers under Section 105(a) of the Bankruptcy Code are order that the Debtors are not required to reserve for any 503(b)(9) claims, including the O'Rourke 503(b)(9) Claims (to the extent the Court does not order their disallowance or recharacterization as unsecured claims), where physical suppliers have undertaken efforts to circumvent the provisions of the Bankruptcy Code by initiating or participating in the District Court Actions in an effort to secure multiple sources of recovery on the same purported claims.

  **B.**   **No Reserve Is Required Because Certain Physical Suppliers Are Asserting Inconsistent Theories of Recovery in these Cases and the District Court Actions.**

31. Regardless of the outcome of the District Court Actions, the Debtors respectfully request that the Court order that no administrative expense reserve be required for all asserted 503(b)(9) claims where a physical supplier has also asserted that the Debtors operated as an agent for vessel owners capable of exercising authority to bind the Vessels under maritime lien law.

32. The Debtors did not act as any Vessel's agent and have consistently objected to the physical suppliers' characterization of the Debtors as an agent of the Vessels in the District Court Actions. However, this is the theory that the physical suppliers *themselves* have advocated, nearly uniformly, in the District Court Actions in an effort to manufacture their own

maritime lien claims. Therefore, the physical suppliers, as alleged holders of 503(b)(9) claims in these Bankruptcy Cases, are estopped from pursuing inconsistent legal theories in different courts in their effort to collect on a singular claim.

33. Courts in Connecticut and Texas reviewing the appropriateness of recovery from a disclosed agent have uniformly held that as a disclosed agent, OWB-USA would not bear any liability to physical suppliers for its actions in furtherance of a principal's goals. Rather, the Vessels as the principals would bear all such liability to the physical suppliers. *See, e.g.*, *Bernsen v. Live Oak Insurance Agency, Inc.*, 52 S.W.3d 306, 309-10 (Tex. App. 2001); *Rich–Taubman Assoc. v. Commissioner of Revenue Servs.*, 674 A.2d 805, 809 (Conn. 1996). Therefore, until these arguments are resolved in the District Court Actions, the Debtors should either be entitled to a recharacterization of the O'Rourke 503(b)(9) Claim as non-priority general unsecured claims or be permitted to eliminate the O'Rourke 503(b)(9) Claim from any required administrative expense reserve in the plan.

34. Finally, in the event that the Debtors determine that any portion of the O'Rourke 503(b)(9) Claim (or reclassified unsecured claims) have been satisfied or adjudicated through the District Court Actions (or by another order of this Court), the Debtors further reserve their right to amend this Objection to reflect that the O'Rourke 503(b)(9) Claims have been satisfied and/or to file a supplemental objection with respect to all such claims as well as to object to any reclassified unsecured claims in connection with the claims resolution process to be implemented under a liquidating plan.

## **CONCLUSION**

**WHEREFORE**, the Debtors respectfully request the Court to enter an order, substantially in the form, attached hereto as **Exhibit A**, granting the relief requested in the Objection and such other and further relief as may be just and proper.

Dated: Hartford, Connecticut
August 20, 2015

Respectfully submitted,

 */s/ Michael R. Enright*
Michael R. Enright, Esq. (ct10286)
Patrick M. Birney, Esq. (ct19875)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT  06103
Telephone: (860) 275-8290
Facsimile:  (860) 275-8299
menright@rc.com
pbirney@rc.com

- and -

Natalie D. Ramsey, Esq. (admitted *pro hac vice*)
Davis Lee Wright, Esq. (admitted *pro hac vice*)
MONTGOMERY, McCRACKEN,
    WALKER & RHOADS, LLP
437 Madison Avenue, 29th Floor
New York, NY 10022
Telephone: (212) 867-9500
Facsimile:  (212) 599-1759
nramsey@mmwr.com
dwright@mmwr.com

*Counsel for the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| O.W. Bunker Holding North America Inc., *et al.*,[1] | : | Case No. 14-51720 (AHWS) |
| Debtors. | : | Jointly Administered |

**CERTIFICATE OF SERVICE**

I, Michael R. Enright, certify that on August 20, 2015, I caused a copy of the *Debtors' Objection to (I) Request by O'Rourke Marine Services L.P., L.L.P. for Allowance and Reimbursement of 11 U.S.C. § 503(B)(9) Administrative Expenses and (II) O'Rourke Marine Services Proof of Claim #11 Filed Against Debtor O.W. Bunker USA Inc.* to be served on all parties who have electronically entered a notice of appearance through the notice of filing generated by the Court's Case Management/Electronic Case File ("CM/ECF") system.

Dated: Hartford, Connecticut
August 20, 2015

                                                            Respectfully submitted,

                                                            /s/ Michael R. Enright
                                                            Michael R. Enright, Esq. (ct10286)
                                                            Patrick M. Birney, Esq. (ct19875)
                                                            ROBINSON & COLE LLP
                                                            280 Trumbull Street
                                                            Hartford, CT  06103
                                                            Telephone: (860) 275-8290
                                                            Facsimile:  (860) 275-8299
                                                            menright@rc.com
                                                            pbirney@rc.com

---

[1] The last four digits of the Debtors' taxpayer identification numbers follow in parentheses:  O.W. Bunker Holding North America Inc. (7474), O.W. Bunker North America Inc. (7158) and O.W. Bunker USA Inc. (3556).  The Debtors' address is 281 Tresser Blvd., 2 Stamford Plaza, 15th Floor, Stamford, CT  06901.

3942978v2

**EXHIBIT A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| O.W. Bunker Holding North America, Inc., *et al.*,[1] | : | Case No. 14-51720 |
| | : | |
| Debtor. | : | Jointly Administered |
| | : | |

**ORDER GRANTING DEBTORS' OBJECTION TO (I) REQUEST BY O'ROURKE MARINE SERVICES L.P., L.L.P. FOR ALLOWANCE AND REIMBURSEMENT OF 11 U.S.C. § 503(b)(9) ADMINISTRATIVE EXPENSES AND (II) O'ROURKE MARINE SERVICES PROOF OF CLAIM #11 FILED AGAINST DEBTOR O.W. BUNKER USA INC. CLAIMS ASSERTED PURSUANT TO 11 U.S.C. § 503(b)(9)**

Upon consideration of the Objection[2] and the Debtors corresponding request for entry of an order, pursuant to Bankruptcy Code §§ 105 and 503(b) disallowing and/or recharacterizing O'Rourke's 503(b)(9) Claims; and the Court having jurisdiction to consider the Objection and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Objection and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and the relief requested being in the best interest of the Debtors, their estates, unsecured creditors, and other parties-in-interest; and the Court having reviewed the Objection and pleadings related thereto; and upon the record of these cases and any hearing held to consider the Objection; and after due deliberation and sufficient cause appearing therefor; and due and proper notice of the Objection having been provided; and it appearing that no further notice need be provided:

---

[1] The last four digits of the Debtors' taxpayer identification numbers follow in parentheses: O.W. Bunker Holding North America Inc. (7474), O.W. Bunker North America Inc. (7158) and O.W. Bunker USA Inc. (3556). The Debtors' address is 281 Tresser Blvd., 2 Stamford Plaza, 15th Floor, Stamford, CT 06901.

[2] Capitalized terms not otherwise defined herein shall be given the meaning ascribed to them in the Objection.

3942978v2

IT IS HEREBY ORDERED THAT:

1. The Objection is granted as set forth herein.

2. The O'Rourke OWB-NA Claim shall be reduced by $628,446.43, reflecting O'Rourke's priority treatment pursuant to Section 546(c)(1) of the Bankruptcy Code as a reclaiming seller, and the O'Rourke OWB-NA Claim shall be allowed as an administrative expense in the amount of $178,387.00 against O.W. Bunker North America Inc.

3. O'Rourke's request for administrative expense treatment for any portion of the O'Rourke OWB-NA Claim reflecting "Market Loss" is DENIED.

4. As a successful reclaiming seller, O'Rourke shall not be entitled to a non-priority general unsecured claim for Market Loss.

5. O'Rourke's OWB-USA Claims are reclassified in their entirety as non-priority general unsecured claims, subject to further reclassification and potential objection, against OWB-USA.

6. To the extent that any of the O'Rourke 503(b)(9) Claims receives payment through the District Court Actions, the claims shall be subject to reduction or disallowance on the basis of such recovery.

7. This Court shall retain jurisdiction over all matters arising from or related to the interpretation and implementation of this Order.

Dated: Bridgeport, Connecticut
_____, 2015

_____
THE HONORABLE ALAN H.W. SHIFF
UNITED STATES BANKRUPTCY JUDGE

3942978v2